UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) ) |  |
| Plaintiff, | ) ) ) |  |
| v. | ) ) ) | No. 1:23-cv-11871-JEK |
| CHERLENE BELIZAIRE-JEUDY, Individually and as Parent, Next Friend, and Custodian of minor children C.P.J. and A.S.J., | ) ) ) ) ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR LEAVE TO DEPOSIT FUNDS INTO COURT REGISTRY**

**KOBICK, J.**

In this interpleader action, plaintiff Metropolitan Life Insurance Company ("MetLife") seeks to determine the rightful beneficiary of a life insurance policy purchased by Gregory Jeudy, who passed away in 2022. Named as defendant is Cherlene Belizaire-Jeudy, in her individual capacity and as parent and guardian of her children with Mr. Jeudy, C.P.J. and A.S.J. In 2015, Mr. Jeudy designated Ms. Belizaire-Jeudy as the first beneficiary, entitled to 100% of the funds in the life insurance policy, and designated their children as contingent beneficiaries, each entitled to 50% of the proceeds of the policy. MetLife contends that there exists a question whether Ms. Belizaire-Jeudy's status as beneficiary was revoked by operation of M.G.L. c. 190B, § 2-804(b), when she and Mr. Jeudy divorced in 2019, such that the proceeds of the life insurance policy should be paid out to the children rather than to Ms. Belizaire-Jeudy.

For the reasons explained below, the Court concludes that this case is not properly brought

as an action in interpleader. MetLife's action does not clear the minimum threshold level of substantiality needed to subject Ms. Belizaire-Jeudy and her family to this lawsuit because, under binding First Circuit precedent and the plain terms of the life insurance policy, Ms. Belizaire-Jeudy's status as primary beneficiary of the policy was not statutorily revoked by the divorce. The Court will, accordingly, deny MetLife's motion to deposit the funds from the policy into the court's registry and dismiss this action.

## BACKGROUND

Gregory T. Jeudy and Cherlene Belizaire-Jeudy were married in 2009 and had two children, C.P.J. and A.S.J. ECF 1, ¶¶ 3-4, 9-10; ECF 1-6, at 1. Both children are minors. ECF 1, ¶ 10. In 2017, Mr. Jeudy and Ms. Belizaire-Jeudy decided to separate, and in March 2019, they finalized their divorce. ECF 1-6; ECF 1-7; ECF 7. Pursuant to their separation agreement, Mr. Jeudy was required to "obtain and maintain in full force and effect life insurance policies with a value of $150,000 with [Ms. Belizaire-Jeudy] designated as beneficiary for her benefit and for the benefit of the minor Children." ECF 1, ¶ 16; ECF 1-6, at 12. The agreement also specified:

> This obligation shall continue so long as the Children or remaining child are/is unemancipated or if there is an alimony obligation to [Ms. Belizaire-Jeudy]. Such life insurance is for the purposes of supporting the children and/or college costs. At such time as all of the Children are emancipated, [Mr. Jeudy] shall be entitled to cancel this policy or change the beneficiary.

ECF 1-6, at 12. The aforementioned sections of the separation agreement merged with the final judgment of the divorce. *Id.* at 4, ¶ 8.

Mr. Jeudy passed away on October 31, 2022. ECF 1, ¶ 11; ECF 1-2. At the time of his death, he was enrolled under a MetLife Policy for Basic Life insurance coverage in the amount of $5,000 and Supplemental Life insurance coverage in the amount of $335,000. ECF 1, ¶ 12. Years earlier, on February 10, 2015, Mr. Jeudy had signed a life insurance beneficiary designation form

2

naming Ms. Belizaire-Jeudy as "Beneficiary #1" and allocating 100% of the proceeds to her, and C.P.J. and A.S.J. as "Beneficiary #2" and "Beneficiary #3" respectively, allocating 50% to each child. *Id.* ¶ 13; ECF 1-3. The beneficiary designation form specified that if 100% is allocated to multiple beneficiaries, the first beneficiary receives all of the proceeds. ECF 1, ¶ 14; ECF 1-4, at 2. Mr. Jeudy did not modify the beneficiary designation form after his divorce from Ms. Belizaire-Jeudy.

On December 31, 2022, following Mr. Jeudy's death, Ms. Belizaire-Jeudy made a claim with MetLife seeking payment of the policy benefits. ECF 1, ¶ 15, ECF 1-5. MetLife did not disburse the funds to Ms. Belizaire-Jeudy. Instead, on August 16, 2023, it filed this interpleader action to determine whether Ms. Belizaire-Jeudy or her children—who have not filed a claim with MetLife—are the rightful beneficiaries of the policy. Ms. Belizaire-Jeudy, proceeding *pro se*, filed a response, construed by the Court as an answer, on January 11, 2024. ECF 7. After the Court held a scheduling conference, ECF 10, MetLife moved to deposit the funds from the life insurance policy into the Court's registry pursuant to Federal Rule of Civil Procedure 67 and Local Rule 67.2, asked to be discharged from the action, and asked to be discharged from any liability regarding Mr. Jeudy's policy. ECF 11. Ms. Belizaire-Jeudy's response indicated that she "support[s]" MetLife's motion, but also requested that she and her family be "allowed access to the funds as soon as possible" because they "have had to endure a great emotional loss and countless court proceedings" since Mr. Jeudy's passing. ECF 12.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 67 provides, "[i]n an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of

court, may deposit with the court all or any part of such sum or thing." "The core purpose of Rule 67," the First Circuit has explained, "is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." *Alstom Caribe, Inc. v. George P. Reintjes Co., Inc.*, 484 F.3d 106, 113 (1st Cir. 2007) (citing 12 C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure § 2991 (2d ed. 1997)). Thus, "a district court should not grant a Rule 67 motion unless the question of entitlement is genuinely in dispute." *Id.*

In an interpleader action like this, the question whether an "entitlement is genuinely in dispute" generally corresponds with the threshold showing that must be made in any interpleader action—namely, that there exist potentially adverse claims that meet a "'minimal threshold level of substantiality.'" *Equitable Life Assurance Soc. of the U.S. v. Porter-Englehart*, 867 F.2d 79, 84 (1st Cir. 1989) (quoting 7 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1704 (2d ed. 1986)). "Where adversative claims to a fund do not exist, a party has no right to deposit into court monies which it knows belong to another, and casually stroll away." *Id.* at 89.

## DISCUSSION

### I.     Interpleader Actions.

Interpleader is an equitable proceeding that "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1704 (3d ed. 2023 update) (hereinafter Wright, Miller & Kane). In an interpleader action, the party that possesses the property or fund, known as the stakeholder, can join all claimants and resolve their claims in "a single forum and proceeding." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 (1967). In the classic form

4

of an interpleader action, the stakeholder "has no interest in the money or property at issue but simply deposits the money or property with the court for distribution to the claimants." *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 244 (4th Cir. 2021). To bring an interpleader action, the stakeholder need not have already faced adverse claims to the fund or property; it is enough if the stakeholder "legitimately fears multiple vexation directed against a single fund." 7 Wright, Miller & Kane, *supra*, § 1704.

Interpleader actions are authorized by Federal Rule of Civil Procedure 22, known as rule interpleader, and 28 U.S.C. § 1335, known as statutory interpleader. *See Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178, 182 n.2 (1st Cir. 2006). Rule 22 allows for interpleader actions when a party is or may be exposed "to double or multiple liability," Fed. R. Civ. P. 22(a)(1), but can only be invoked when there is an independent basis for subject matter jurisdiction, *see AmGuard Ins. Co.*, 999 F.3d at 244-45. This case is an interpleader action under Rule 22, and jurisdiction is based on diversity of citizenship, as MetLife is incorporated and has its principal place of business in New York, Ms. Belizaire-Jeudy and her children are Massachusetts residents, and the amount in controversy exceeds $75,000.

Interpleader actions proceed in two phases. *See Sevelitte v. Guardian Life Ins. Co. of Am.*, 55 F.4th 71, 79 (1st Cir. 2022). In the first phase, the "court determines whether the requirements of interpleader have been met and whether to discharge the stakeholder from further liability to the parties" and further participation in the case. *Id.* During this phase, the court examines whether the adverse claims possess "a minimal threshold level of substantiality." *Porter-Englehart*, 867 F.2d at 84; *see also Sevelitte*, 55 F.4th at 80; 7 Wright, Miller & Kane, *supra*, § 1704. Although the requirements for interpleader will be met when the stakeholder faces a "risk of exposure to multiple liability," *Sevelitte*, 55 F.4th at 80, the requirements for interpleader are not satisfied when one of

5

the potentially adverse claims "clearly is devoid of substance" or where "the fear of multiple litigation or liability is groundless," 7 Wright, Miller & Kane, *supra*, § 1705. *See also Forcier*, 469 F.3d at 182 n.3 (suggesting that the court may look skeptically "upon interpleader actions brought by insurers who, in the last analysis, are seeking to shift their responsibilities to the district court without any clear demonstration of a need for interpleader relief"); *Porter-Englehart*, 867 F.2d at 89 (interpleader is not "a mere convenience for a stakeholder, exercisable at whim"). "The burden is on the party seeking interpleader to demonstrate that the requirements are satisfied." 7 Wright, Miller & Kane, *supra*, § 1714. In the second phase, "the court adjudicates the respective rights of the claimants" to the fund at issue. *Sevelitte*, 55 F.4th at 80.

In moving to deposit the funds from the life insurance policy in the court's registry, obtain discharge from the case, and secure a discharge from liability, MetLife asks the Court to conclude, at the first phase, that its concern over the possibility of adverse claims from Ms. Belizaire-Jeudy and her children meets the minimal threshold level of substantiality needed to sustain this interpleader action.

## II. MetLife Has Not Demonstrated Adverse Claims Attaining a Minimal Level of Substantiality.

MetLife contends that it cannot determine whether Ms. Belizaire-Jeudy or her children are entitled to the proceeds of Mr. Jeudy's life insurance policy and it therefore faces the threat of adverse claimants. In MetLife's view, Ms. Belizaire-Jeudy's status as 100% beneficiary under the policy might have been revoked by operation of M.G.L. c. 190B, § 2-804 upon her divorce from Mr. Jeudy. Averring that, as a disinterested stakeholder, it is indifferent as to who ultimately receives the policy benefits, MetLife asks the Court to determine the lawful beneficiary.

MetLife is correct that, under the Massachusetts Uniform Probate Code, "divorce typically revokes the beneficiary status of an ex-spouse." *Sevelitte*, 55 F.4th at 75. The relevant statute,

M.G.L. c. 190B, § 2-804(b)(1), specifies: "Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage . . . revokes any revocable . . . disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument." Life insurance policies count as "governing instruments," M.G.L. c. 190B, § 1-201(19), and the Massachusetts Supreme Judicial Court ("SJC") has recognized that Section 2-804(b) applies to life insurance designations, *see American Family Life Assurance Co. of Columbus v. Parker*, 488 Mass. 801, 806 (2022).

As its text makes plain, Section 2-804(b) operates to revoke the designation of an ex-spouse as a beneficiary of a life insurance policy upon divorce unless one of the three exceptions to the statute applies. *Parker*, 488 Mass. at 810. At issue in this case is the "contract exception," under which "the express terms of a . . . contract relating to the division of the marital estate made between the divorced individuals" can preserve the designation of an ex-spouse as a beneficiary of a life insurance policy. M.G.L. c. 190B, § 2-804(b). As with all contracts, "the dominant considerations in interpreting a separation [or divorce] agreement are the language of the agreement and the intent of the parties." *Foster v. Hurley*, 444 Mass. 157, 164 (2005).

Recently, in *Sevelitte*, the First Circuit considered whether the terms of a divorce agreement satisfied the contract exception, such that the ex-wife of the decedent policyholder retained her beneficiary status. 55 F.4th at 83-84. Applying ordinary principles of contract interpretation, the First Circuit determined that the divorce agreement at issue was ambiguous. *Id.* On the one hand, the agreement contained language signifying that no changes could be made to the beneficiary designation. *See id.* at 83. That language—specifying that the insurance policy "shall remain in

full force and effect"—had been relied on by the SJC to give an ex-husband an equitable remedy when his ex-wife, the decedent, later altered her designation of him as a beneficiary on her insurance policy. *See id.* at 83-84 (citing *Foster*, 444 Mass. at 159, 163-65). On the other hand, the divorce agreement in *Sevelitte* did not explicitly name the ex-wife as the continuing beneficiary of the policy. *See id.* at 84. These competing indicators generated ambiguity in the divorce agreement that made resort to interpleader appropriate; put otherwise, they made the adverse claims asserted by the wife and ex-wife in the case surpass the minimal threshold of substantiality needed to sustain the interpleader action. *Id.* at 84 & n.14.

*Sevelitte* juxtaposed the ambiguity in the divorce agreement with two unambiguous separation agreements analyzed in different cases concerning the contract exception. In *American Family Life Assurance Co. of Columbus v. Parker*, the "separation agreement 'omitted any discussion of insurance policies even though the parties were invited to include them.'" *Sevelitte*, 55 F.4th at 84 (quoting *Parker*, 488 Mass. at 812). There was, therefore, no basis on which the court could conclude that the contracting parties wished to preserve the ex-wife's status as beneficiary of the ex-husband's insurance policy following the divorce, and the designation was therefore revoked by operation of Section 2-804(b). *See id.* (citing *Parker*, 488 Mass. at 812). In *Thrivent Financial for Lutherans v. Warpness*, on the other hand, "the separation agreement 'explicitly required [the ex-husband] to maintain life insurance . . . *naming [the ex-wife] as the beneficiary*.'" *Sevelitte*, 55 F.4th at 84 n.14 (emphasis in original) (quoting *Thrivent Fin. for Lutherans v. Warpness*, No. 16-cv-1321, 2017 WL 2929521, at *4 (E.D. Wis. July 10, 2017)). This clear expression of intent meant that the contract exception applied and the ex-husband's "designation of [the ex-wife] as beneficiary was not statutorily revoked by their divorce." *Warpness*, 2017 WL 2929521, at *4 (applying Massachusetts law). Unlike these clear-cut cases,

8

the First Circuit explained, the divorce agreement at issue in *Sevelitte* was ambiguous and the applicability of the contract exception could not, therefore, "be resolved by either *Parker* or *Warpness*." *Sevelitte*, 55 F.4th at 84 n.14. It was "precisely this ambiguity which allowed [the insurance company] to bring its interpleader action in good faith," the court emphasized. *Id.*

MetLife's motion cites *Sevelitte* but does not recognize that *Sevelitte* conclusively resolves this case in Ms. Belizaire-Jeudy's favor. Recall that the separation agreement at issue here required Mr. Jeudy to "obtain and maintain *in full force and effect* life insurance policies with a value of $150,000 with [Ms. Belizaire-Jeudy] *designated as beneficiary* for her benefit and for the benefit of the minor Children." ECF 1-6, at 12 (emphases added). This agreement has all the features that, under *Sevelitte*'s reasoning, unambiguously satisfy the contract exception. First, the agreement uses the words "full force and effect," which, as the First Circuit explained, are commonly "used in contracts to specify that no changes may be made to the referenced document." *Sevelitte*, 55 F.4th at 83. Second, the agreement has both elements that, in the First Circuit's eyes, made *Warpness* an easy case: it (1) explicitly required Mr. Jeudy to maintain life insurance, and (2) required that Ms. Belizaire-Jeudy be named as the beneficiary of the policy. *See Sevelitte*, 55 F.4th at 84 n.14. Thus, under binding precedent, the contract exception applies here, and Section 2-804(b) did not operate to revoke Ms. Belizaire-Jeudy's status as beneficiary upon her divorce from Mr. Jeudy.

In an attempt to find ambiguity in the separation agreement that might justify its interpleader action, MetLife contends that a court could find that the divorce revoked Ms. Belizaire-Jeudy's designation because the separation agreement does not name the specific life insurance policy in question. ECF 11, ¶¶ 16, 21. This argument is inconsistent with *Sevelitte* in two respects. First, *Sevelitte* viewed the separation agreement analyzed in the SJC's decision in

9

*Foster* as having "clearer language" than the divorce agreement at issue in that case. 55 F.4th at 83-84. *Foster*, in turn, concerned a separation agreement that required the decedent ex-wife to maintain an insurance policy naming her ex-husband as the primary beneficiary. 444 Mass. at 159. The SJC rejected the argument that the failure of the separation agreement to identify a specific insurance policy left the ex-husband without a remedy when his ex-wife, many years later, removed him as beneficiary. *Id.* at 163-65. The separation agreement in *Foster*, explained the First Circuit, contained "clearer language" indicating that no changes could be made to the beneficiary designation, even though the insurance policy was "unnamed." *Sevelitte*, 55 F.4th at 83-84 (citing *Foster*, 444 Mass. at 159, 163-65).

Second, there are no material differences between the separation agreement in *Warpness* and the separation agreement here—and, again, the First Circuit viewed *Warpness* as an easy case. *See Sevelitte*, 55 F.4th at 84 n.14. In *Warpness*, as here, the separation agreement did not name the specific life insurance policy. *See* 2017 WL 2929521, at *1. The agreement's explicit requirement that the decedent "maintain life insurance in the amount of at least $184,000 naming [his ex-wife] as the beneficiary" was sufficient to conclude that Section 2-804(b) did not revoke his designation of his ex-wife as beneficiary upon their divorce. *Id.* at *4. In *Warpness*, as here, the parties' intent, as embodied in the separation agreement, was for the former spouse to have access to insurance proceeds for the benefit of the children before they became emancipated; the identity of the life insurance policy was immaterial. Thus, any contention that a separation agreement is ambiguous solely because it does not cite a specific policy is foreclosed by *Sevelitte*.

MetLife also gestures to passages concerning Mr. Jeudy's obligations when the children are no longer minors or become emancipated, but it does not explain their import. The plain text of the separation agreement imposed on Mr. Jeudy the "obligation" to maintain a life insurance

10

policy naming Ms. Belizaire-Jeudy as the beneficiary as long as their children were unemancipated or he owed alimony. ECF 1-6, at 12. When both contingencies were met, Mr. Jeudy had the option of canceling the policy or changing the beneficiary. *Id.* It is undisputed that his policy remained in effect and Mr. Jeudy never changed his beneficiary designations, so the question whether the children are at present emancipated has no bearing on this case. As *Warpness* explained, Section 2-804(b) either revokes the designation at the time of divorce, or it does not revoke the designation at all. 2017 WL 2929521, at *4. Since the contract exception to Section 2-804(b) applies and the divorce did not revoke Ms. Belizaire-Jeudy's status as beneficiary, Ms. Belizaire-Jeudy is unambiguously entitled to the proceeds of the life insurance policy.

Although interpleader is "remedial and to be liberally construed," *Tashire*, 386 U.S. at 533, it does not extend so far as to allow actions foreclosed by binding precedent. MetLife suggests that interpleader may be particularly appropriate when minor children could have a claim to a fund. That concern may, in some cases, be well founded. But in these circumstances, there is no cogent argument that Ms. Belizaire-Jeudy's beneficiary status was statutorily revoked by the divorce. In the absence of any legal theory as to how the children could displace Ms. Belizaire-Jeudy as the 100% beneficiary, "the fear of multiple litigation or liability is groundless," 7 Wright, Miller & Kane, *supra*, § 1705, and there are no potentially adverse claims that meet a "minimal threshold level of substantiality," *Porter-Englehart*, 867 F.2d at 84.

MetLife has not met its burden at the first stage to demonstrate proper resort to an interpleader action under Rule 22. And because there is no "question of entitlement . . . genuinely in dispute," MetLife's motion to deposit funds in the court registry is denied. *Alstom Caribe*, 484 F.3d at 113.

**III.      Dismissal Is an Appropriate Equitable Remedy.**

The determination that MetLife has not properly brought an action in interpleader does not fully resolve this case. In responding to MetLife's motion to deposit funds into the court's registry, Ms. Belizaire-Jeudy indicated that she "support[ed]" MetLife's motion, but also asked that she and her family be "allowed access to the funds as soon as possible" because they "have had to endure a great emotional loss and countless court proceedings" since Mr. Jeudy's passing. ECF 12.

While Ms. Belizaire-Jeudy's response does not formally seek dismissal of this action, several equitable considerations counsel in favor of construing it as a request for dismissal. First, Ms. Belizaire-Jeudy is a self-represented litigant in this action, and documents filed by *pro se* litigants are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). It is clear from her filings that she wishes to resolve this matter expeditiously in order to obtain the life insurance proceeds to support her children. Indeed, her answer explains the care and thought that she and Mr. Jeudy put into financial planning for their children's wellbeing. *See* ECF 7. Second, the First Circuit has emphasized that, "[a]t bottom, interpleader is an equitable mechanism, and courts should not hesitate to 'eliminat[e] those technical restraints on the device that are not founded on adequate policy considerations.'" *Hudson Sav. Bank v. Austin*, 479 F.3d 102, 108 (1st Cir. 2007) (quoting 7 Wright, Miller & Kane, *supra*, § 1704 (3d ed. 2001)). Delaying resolution of this action further for additional motion practice would elevate form over substance, where the Court has already determined that, as a matter of law and under binding precedent, the divorce did not revoke Ms. Belizaire-Jeudy's beneficiary status. Mr. Jeudy and Ms. Belizaire-Jeudy agreed in their separation agreement that the life insurance funds were "for the purposes of supporting the children and/or college costs." ECF 1-6, at 12. Childhood is fleeting, and the Court sees no cause to delay Ms. Belizaire-Jeudy's access to the life insurance funds with further motion

practice. Equitable considerations thus counsel in favor of construing Ms. Belizaire-Jeudy's response to MetLife's motion as including a request for dismissal of this action and, for the reasons explained, dismissing the case for failure to meet the threshold standard for bringing an action in interpleader.

## CONCLUSION AND ORDER

For the foregoing reasons, MetLife's motion to deposit funds in the Court registry is DENIED and this action is DISMISSED. The Clerk shall enter a separate order of dismissal.

**SO ORDERED.**

/s/ Julia E. Kobick  
Julia E. Kobick  
United States District Judge

Dated: April 9, 2024